# Engle v. Commonwealth.

(Decided May 20, 1930.)

D. I. DAY for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

The appellant, Nathan Engle, at his trial in the Letcher circuit court, under an indictment charging him with maliciously shooting at Hiram Johnson, was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled, and, following the judgment pronounced on the verdict, he has prosecuted this appeal.

Although the motion for a new trial contained a number of alleged errors as grounds in support of it, there is but one argued in brief of counsel in this court and which is: That the evidence was insufficient to sustain the *felony* conviction, and that appellant, at most, should have been punished for only a misdemeanor, i. e., that of doing the act with which he was charged, but without previous malice, an offense denounced by section 1242 of our present Statutes. When first arraigned, defendant entered a plea of guilty to the accusation against him in the indictment; but for some unexplained cause he later withdrew that plea and entered one of not guilty.

The evidence developed substantially these facts: Appellant and Hiram Johnson were neighbors living on Little Cowan creek in Letcher county, and but a short distance apart. Each of them had small children, and a juvenile feud seems to have arisen between the youth-

ful members of each family, resulting in a number of Lilliputian battles, but which were followed with no serious results. On the particular occasion of the shooting with which appellant was charged, Johnson, a Mr. McDonald and perhaps others, came from a sawmill where they were working into the main road along the creek and which passed in front of the residences of both Engle and Johnson. The latter's little son was following his father and was drawing a small metal express wagon. They passed some of the children of appellant, and soon thereafter the attention of Johnson was called to the fact that the children of appellant and his small son were engaged in a fight, and he went back to them and separated them and picked up the wagon and proceeded with his boy toward his residence. Some of the family of appellant saw the transaction and informed him of it; whereupon he procured his pistol and started down the road, and, when he met Johnson, McDonald, and the others, he inquired if his son, Bruce Engle, was in the crowd (appellant being partially blind), and, being informed that he was not, he then pointed his pistol in the direction of Johnson, who was only some four feet from him, and fired it, but Johnson threw up the toy wagon he was carrying and deflected the bullet, and thereby prevented it from wounding him. Appellant then snapped his pistol a time or two at Johnson, but it failed to fire.

There was a later difficulty between appellant and Johnson after the latter had armed himself, but with which we are not now concerned. The account of the shooting as above outlined was testified to by at least three witnesses and was not materially contradicted by defendant or any of his witnesses, except appellant said that, after hearing and being told about the difficulty between the children of the respective parties and their separation by Johnson, he then went down or up the road to where Johnson was and ''I couldn't see how to do anything, come on out of the field and went down there, I went right on down there and I met up with Hiram and Ed and Mr. McDonald and I says to them, I says, Is Bruce Engle in this crowd, Hiram says, No By God he went down there and jumped on my boys awhile ago and when he said that I fired the gun towards him, I couldn't tell, I guess we were four feet apart.'' Later he was asked: ''Q. What made you shoot that shot there into that wagon and it in his (Johnson's) hand? A. I just

simply flew mad and never took a thought until I done and fired and after the gun fired I thinks to myself if I ain't shot you I won't and changed the pistol to my left hand.''

No better defense was developed by the testimony of any witness who testified in the case, either for the commonwealth or for himself, and the statement that Johnson applied to him profane language on that occasion is denied by a majority of the witnesses. Just how counsel, under the condition of the evidence as above outlined, can seriously contend that there was no evidence or not a sufficiency thereof to support the charge of malicious shooting is, to say the least of it, beyond our comprehension. At least three witnesses testified positively to a complete and perfect violation of the statute (section 1166, Ky. St.) under which the indictment was found, and it would be a useless consumption of time and space to procure and insert prior cases from this court authorizing the submission to the jury of the *malicious* shooting with which defendant was charged, and supporting the finding to that effect.

Because of appellant's unfortunate affliction (greatly impaired vision) we can not help sympathizing with him, and have closely scrutinized this record to discover some legitimate ground whereby his penitentiary sentence might be avoided, but we have been unable to do so, and we are therefore left with no alternative but to affirm the judgment, which is accordingly done.